Jordan Susman (SBN 246116)
FREEDMAN + TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: 310-201-0005
Facsimile:  310-201-0045

Attorney for Plaintiffs
CHRISTOPHER ORLANDO TORRES
and NYANIFY, INC.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ORLANDO TORRES, an individual, NYANIFY, INC., a Texas Corporation,<br><br>            Plaintiffs,<br><br>vs.<br><br>ARUN MARIAPPAN, an individual, SOCIALSOFT, INC., a California Corporation,<br><br>            Defendants. | Case No.:  CV12-8514 CAS (SSx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS ARUN MARIAPPAN AND SOCIALSOFT, INC.**<br><br>[Declarations of Jordan Susman and Kia Kamran filed concurrently herewith]<br><br>[(Proposed) Order; (Proposed) Judgment lodged herewith]<br><br>Date:    Sept. 9, 2013<br>Time:   10:00 a.m.<br>Courtroom: 5 |

-1-
**MOTION FOR DEFAULT JUDGMENT**

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, Plaintiffs Christopher Orlando Torres and Nyanify, Inc. ("Plaintiffs"), will move this honorable Court on September 9, 2013, 10 a.m., at the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, Courtroom 5, before the Honorable Christina A. Snyder for a default judgment against defaulting defendants Arun Mariappan and SocialSoft, Inc. ("Defendants") as to Plaintiffs' causes of action for Copyright Infringement, Trademark Infringement, and False Designation of Origin.

Specifically, Plaintiffs seek statutory damages in the amount of $100,000, attorney's fees totaling $5,600 and a permanent injunction restraining, enjoining, and prohibiting Defendants, their agents, servants, employees, officers, successors and assigns, and all persons or entities acting in concert or participation with Defendants or on Defendants' behalf, from reproducing, distributing, performing, publicly displaying, or making into a derivative work any goods, services or marks that are substantially similar to Plaintiffs' goods, services and marks.


Dated:    July 2, 2013                    FREEDMAN + TAITELMAN, LLP


By: _____/s/_____
JORDAN SUSMAN
Attorney for Plaintiffs
Christopher Orlando Torres and
Nyanify, Inc.

-2-
**MOTION FOR DEFAULT JUDGMENT**

# TABLE OF CONTENTS

Page

I.   Introduction ................................................... 1

II.   A Default Judgment Is Available Against Defendants Based On Their  Non-Appearance ................................................... 1

  A.   Defendants Were Served With The Summons And Complaint And Their Default Was Entered ................................................... 2

  B.   Mariappan Is Not In The Military Service ................................................... 2

  C.   Mariappan Is Neither A Minor Nor An Incompetent Person ................... 3

  D.   Defendants Were Provided With Notice Of This Motion........................... 3

III.   The Eitel Factors Support A Default Judgment Against Defendants ............ 3

  A.   Possible Prejudice To Plaintiffs ................................................... 3

  B.   The Merits of Plaintiffs' Claims And The Sufficiency Of The Complaint 4

    1.   Defendants Infringed Upon Plaintiffs' Copyright ..................................... 5

    2.   Defendants Infringed Upon Plaintiffs' Trademark ................................... 6

      a.   Defendants Have Used The Nyan Cat Mark In Commerce In Connection With the Sale, Offering For Sale, And Advertising Of Goods Without Plaintiffs' Consent........................................... 6

      b.   Defendants' Infringing Products Are Likely To  Create Consumer Confusion................................................... 7

        i.   Plaintiffs' Nyan Cat Mark Is Robust …………………………...………8

        ii.   The Goods Offered By Defendants Are Highly Competitive …....……8

        iii.  The Marks Used By Defendants Are Idential To Or Similar To The Nyan Cat Mark ………………………………………......…9

        iv.   Marketing Channels Are Similar ………………...………………………9

        v.   Defendants Intended To Infringe The Nyan Cat Mark …..…………..10

    3.   The Third Cause Of Action For False Designation Of Origin Is Adequately Pleaded ................................................... 11

-i-

**MOTION FOR DEFAULT JUDGMENT**

C.    The Amount of Money at Stake ........................................................ 12

D.    There Is No Possible Dispute Concerning Material Facts ........................ 12

E.    Defendants' Default Did Not Arise From Excusable Neglect .................. 12

F.    The Policy Favoring A Decision On The Merits ...................................... 13

III.   The Requested Relief ............................................................................. 13

A.    Injunctive Relief Under The Lanham Act ............................................... 13

B.    Injunctive Relief Under The Copyright Act ............................................ 14

   1.   Irreparable Harm And Inadequacy Of Monetary Damages ..................... 14

   2.   Balance Of Hardships ...................................................................... 16

   3.   Public Interest ................................................................................ 16

C.    Statutory Damages Under The Lanham Act ........................................... 16

D.    Statutory Damages Under the Copyright Act ......................................... 17

E.    Attorney's Fees ............................................................................... 17

-ii-

**MOTION FOR DEFAULT JUDGMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

**Cases**

A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001) ....... 5

Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)........................................ 2

AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) ................. 7

Amini Innovation Corp. v. KTY Int'l Mktg., 2011 U.S. Dist. LEXIS 26826, *13
(C.D. Cal. Mar. 1, 2011) ...................................................................................... 14

Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir.
1983) ...................................................................................................................... 16

Autodesk, Inc. v. Flores, 2011 U.S. Dist. LEXIS 11687, 18-19 (N.D. Cal. Jan.
31, 2011) ........................................................................................................... 14, 16

Broad. Music, Inc. v. Blueberry Hill Family Rests., 899 F. Supp. 474, 483 (D.
Nev. 1995) ............................................................................................................. 15

Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d
1036, 1054, 1057 (9th Cir. 1999) ......................................................................... 10

Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 826-27 (9th Cir.
1997) ...................................................................................................................... 15

Cal. Security Cans, 238 F. Supp. 2d at 1175, 1176, 1177........................... 4, 12, 13

Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir.
1988) ...................................................................................................................... 14

Danning v. Lavine, 572 F.2d 1386, 1388-89 (9th Cir. 1978)................................ 4

Dish Network, L.L.C. v. SatFTA, 2011 U.S. Dist. LEXIS 25038 (N.D. Cal. Mar.
9, 2011) .................................................................................................................. 16

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) ............................. 14

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)............................... 3, 12

Elektra Ent. Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005)…13

-iii-
**MOTION FOR DEFAULT JUDGMENT**

Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) .................... 3, 4

GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206, 1207 (9th Cir. 2000) .......................................................................................... 10

Heaton Distributing Co. v. Union Tank Car Co., 387 F. 2d 477, 483 (8th Cir. 1967) ......................................................................................... 11

Interstellar Starship Servs. v. Epix, Inc., 304 F.3d 936, 942 (9th Cir. 2002)........ 8

Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003) ............... 14, 17

Klitzner Industries, Inc. v. H. K. James & Co., 535 F. Supp. 1249, 1260 (E.D. Pa. 1982) ................................................................................... 16

Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir. 1985)........ 7

Lifted Research Group, Inc. v. Salem, Case No. C-08-4497 SC, 2009 U.S. Dist. LEXIS 44850, 2009 WL 1371416 at *1 (N.D. Cal. May 15, 2009) .................. 14

Lyon v Quality Courts United, Inc. 249 F2d 790, 795 (6th Cir. 1957)................. 6

M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1082 (9th Cir. 2005) ............................................................................................ 9

Microsoft Corp. v. Marturano, , 2009 U.S. Dist. LEXIS 44450, *22-23 (E.D. Cal. May 27, 2009) ……………………………………………………………..15

Nat'l Football League v. McBee & Burno's Inc., 792 F. 2d 726, 729 (8th Cir. 1986) ......................................................................................... 15

Pepsico Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) .......................................................................................... 2

Pepsico, Inc. v. Distribuidora La Matagalpa, Inc., 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007) ............................................................................... 4

Pepsico, Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).......... 3

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2007)........ 5

Perfumebay.com Inc. v. eBay Inc., 506 F.3d 1165, 1173 (9th), 1174 ............ 7, 10

Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-1136 (9th Cir. 1986) ......................................................................................... 15

-iv-

<u>Surfvivor Media, Inc. v. Survivor Productions</u>, 406 F.3d 625, 631 (9th Cir. (2005) ........................................................................................................ 7

<u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) ........... 4

<u>The New West Corporation v. NYM Company of California, Inc.</u>, 595 F. 2d 1194, (9th Cir. 1979) ..................................................................................... 11

<u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1018 (9th Cir. 1985) .................................................................................................... 5

<u>Twentieth Century Fox Film Corp. v. Streeter</u>, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006) .......................................................................................... 2

<u>World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc.</u>, 280 F. Supp. 2d 413, 445(W.D. Pa. 2003) ............................................... 11

**Statutes**

15 U.S.C. §1114 ........................................................................................... 6

15 U.S.C. § 1116(a) ................................................................................... 14

17 U.S.C. § 106(1)-(3). ................................................................................ 5

17 U.S.C. § 502(a) ..................................................................................... 14

17 U.S.C. § 504 .......................................................................................... 18

17 U.S.C. § 504(a) ..................................................................................... 17

17 U.S.C. § 504(c)(1) ................................................................................ 17

17 U.S.C. § 504(c)(2) ................................................................................ 17

17 U.S.C. § 505 .......................................................................................... 17

**Rules**

Fed. R. Civ. P. 55(b)(2) ............................................................................... 2

Fed. R. Civ. P. 55; L.R. 55-1 ....................................................................... 2

Fed. R. Civ. P. 8(d) ...................................................................................... 3

Rule 55(a) ............................................................................................. 2, 13

**MOTION FOR DEFAULT JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.** **Introduction**

Plaintiff Christopher Orlando Torres is the owner of the copyright and trademark in the work of visual art famously known as "Nyan Cat" (the "Work" or the "Mark").  Torres is also the owner of common law trademark rights in and to the trademark "Nyan Cat", and is the owner of pending application serial number 85357643 for such mark with the US Patent and Trademark Office, as well as pending application serial number 85576370 with respect to the visual elements of the Nyan Cat character.  Torres also owns the copyright in Work, VAu001063390.  Plaintiff Nyanify, Inc. ("Nyanify") (Torres and Nyanify are referred to collectively herein as "Plaintiffs") is the corporate entity through which Torres licenses and monetizes the Nyan Cat.

Defendants Arun Mariappan and SocialSoft, Inc. ("SocialSoft") (Mariappan and SocialSoft are referred to collectively herein as "Defendants") willfully marketed and sold Nyan Cat knock off products, including two mobile applications ("apps") on the internet.  As a result of Defendants' actions, Plaintiffs asserted causes of action against Defendants for copyright infringement, trademark infringement, false designation of origin, and unfair business practices.

Despite being served with the Complaint and even acknowledging their wrongful acts, Defendants have been unwilling to participate in this litigation and ceased communicating with Plaintiffs' counsel.  Defendants' infringement is still ongoing.  As Defendants are clearly unwilling to participate in this litigation or resolve this dispute in a manner that will prevent future infringement, Plaintiffs are forced to seek a default judgment against them.

**II.** **A Default Judgment Is Available Against Defendants Based On Their Non-Appearance**

Plaintiffs have satisfied the procedural requirements for a default judgment pursuant to Rules 55(a) and Local Rule 55-1.  Rule 55(b) provides for a court

-1-

**MOTION FOR DEFAULT JUDGMENT**

ordered default judgment following entry of default by the court clerk under Rule 55(a).   See Fed. R. Civ. P. 55(b)(2); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); Pepsico Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  A default judgment is available as long as the plaintiff establishes (1) defendant has been served with the summons and complaint and default was entered for their failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if defendant has appeared in the action, that defendant was provided with notice of the application for default judgment at least three days prior to the hearing.  See Fed. R. Civ. P. 55; L.R. 55-1; Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).  All of these procedural requirements have been satisfied.

### A.    Defendants Were Served With The Summons And Complaint And Their Default Was Entered

On March 16, 2013, Defendants were served via substitute service with a copy of the Summons and Complaint.[1]  Susman Decl. ¶ 2 Exhs. 1, 2.  On March 20, 2013, Plaintiffs filed the proofs of service with the Court.  Susman Decl. ¶ 3. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, Defendants' deadline to file a responsive pleading was on or before April 8, 2013.  Defendants failed to file a responsive pleading.  Susman Decl. ¶ 4.  On May 7, 2013, Plaintiffs filed Requests for Entry of Default against Defendants.  Susman Decl. ¶ 5.  On May 9, 2013, the Clerk of the Court entered default against Defendants.  Susman Decl. ¶ 6 Exh. 5.

### B.    Mariappan Is Not In The Military Service

Mariappan is neither in the military service nor otherwise subject to the Soldiers and Sailors Relief Act of 1940.  Susman Decl. ¶ 8 Exh. 7.

---

[1] Defendants were also served via email months earlier.  Susman Decl. ¶ 7 Exh. 4; Kamran Decl. ¶¶ 2, 3 Exhs. 1, 2.

-2-

**MOTION FOR DEFAULT JUDGMENT**

**C**.     **Mariappan Is Neither A Minor Nor An Incompetent Person**

There is nothing to suggest that Mariappan is a minor or an incompetent person.  Mariappan is the agent for service of process for SocialSoft, and his communications with Plaintiffs' counsel strongly indicate that he is neither incompetent nor a minor.  Susman Decl. ¶¶ 9, 10 Exh. 7.

**D**.     **Defendants Were Provided With Notice Of This Motion**

Pursuant to Local Rule 55-2, Defendants were provided notice of this motion.  Susman Decl. ¶ 11.

**III**.   **The Eitel Factors Support A Default Judgment Against Defendants**

The Ninth Circuit has determined that a court should consider seven discretionary factors, often referred to as the "Eitel factors," before rendering a decision on default judgment.  *See* Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Factors the Court may consider in deciding whether to grant default judgment include (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits.  *Id*. In applying the Eitel factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d).  "In applying this discretionary standard, default judgments are more often granted than denied."  Pepsico, Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).  The Eitel factors weigh in favor of a default judgment against Defendants.

**A**.     **Possible Prejudice To Plaintiffs**

The first Eitel factor weighs in favor of granting Plaintiffs' motion because Plaintiffs will be prejudiced if default judgment is not entered.  If Plaintiffs'

**MOTION FOR DEFAULT JUDGMENT**

motion for default judgment is not granted, Plaintiffs "will likely be without other recourse for recovery." <u>Cal. Security Cans</u>, 238 F. Supp. 2d at 1177.  Moreover, given that Plaintiffs have stated valid causes of action against Defendants, Plaintiffs "undeniably would be prejudiced absent the entry of permanent injunctive relief [by] default judgment." <u>Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.</u>, 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007).

Here, Defendants marketed and sold goods that infringed upon Plaintiffs' exclusive intellectual property rights.  Complaint ¶ 17.  Defendants even admitted their infringing activities, and their infringement is ongoing.  Susman Decl. ¶¶ 12, 16, 17 Exhs. 11, 12; Kamran Decl. ¶4, 5 Exhs. 3, 4.  Defendants have not answered the Complaint or otherwise appeared in this action.  Accordingly, Plaintiffs will be without legal recourse if a default judgment is not entered against Defendants.  Thus, the first Eitel factor supports a default judgment against Defendants.

**B**.    **The Merits of Plaintiffs' Claims And The Sufficiency Of The Complaint**

The second and third Eitel factors favor a default judgment where the complaint sufficiently states a claim for relief under the liberal pleading standards of Rule 8.  *See* <u>Cal. Security Cans</u>, 238 F. Supp. 2d at 1175; <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388-89 (9th Cir. 1978).  The second and third Eitel factors require the Court to analyze the substantive merits of the claim and to ensure that the "plaintiff state[s] a claim on which the [plaintiff] may recover." <u>Cal. Security Cans</u>, 238 F. Supp. 2d at 1175 (citations and quotations omitted).  Upon entry of default, the factual allegations in a plaintiff's complaint, except those relating to damages, are deemed admitted.  *See* <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987); <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977).

Here, Plaintiffs asserted causes of action, including copyright infringement

**MOTION FOR DEFAULT JUDGMENT**

and trademark infringement, based on the undisputed fact that Defendants marketed and sold counterfeit goods that infringed upon Plaintiffs' exclusive intellectual property rights.  These claims are meritorious, and the complaint sufficiently states claims for relief.

## 1. <u>Defendants Infringed Upon Plaintiffs' Copyright</u>

The Copyright Act grants the copyright owner the exclusive right to reproduce a copyrighted work, to distribute copies of the work, and to authorize reproduction or distribution.  *See* 17 U.S.C. § 106(1)-(3).  To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) that the defendant violated at least one exclusive right granted to plaintiff under 17 U.S.C. § 106; <u>A & M Records, Inc. v. Napster, Inc</u>., 239 F.3d 1004, 1013 (9th Cir. 2001); see also <u>Perfect 10, Inc. v. Amazon.com</u>, Inc., 508 F.3d 1146, 1159 (9th Cir. 2007).  A plaintiff may establish that the defendant copied from the plaintiff's work by proving that the defendant had access to the work and that the defendant's work is substantially similar to the plaintiff's work.  *See* <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1018 (9th Cir. 1985).

Plaintiffs have clearly met this standard.  As to the first element, the Complaint alleges that Plaintiff Torres owns the copyright in Nyan Cat and his copyright has been registered with the U.S. Copyright Office.  Complaint ¶ 13 Exh. 2.  As to the second element, a comparison of the Nyan Cat to the infringing goods marketed and sold by Defendants easily confirms the Complaint's allegations that Defendants marketed and sold substantially similar (virtually identical) copies of Nyan Cat.  Complaint Exh. 1; Susman Decl. ¶¶ 13-17 Exhs. ¶ 8-12.  According to SocialSoft's official website, there have been 900,000 downloads of the "Rainbow Cat" app, and 11 million sessions.  Susman Decl. ¶ 17 Exh. 12.  Moreover, Mariappan acknowledged that he engaged in the wrongful acts.  Susman Decl. ¶¶ 10, 12.

Thus, Plaintiffs have adequately pled their first cause of action for copyright

**MOTION FOR DEFAULT JUDGMENT**

infringement.

## 2. **Defendants Infringed Upon Plaintiffs' Trademark**

In order to state a claim for infringement of a trademark, a plaintiff must allege facts showing that defendants used the mark or a reproduction or imitation (1) in commerce, (2) without consent, (3) in connection with the sale, offering for sale, or advertising of goods or services, and (4) in a manner likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods or services. *See* 15 U.S.C. §1114; <u>Lyon v Quality Courts United, Inc</u>. 249 F2d 790, 795 (6th Cir. 1957). The Complaint amply pleads all of these elements for trademark infringement.

### a. **Defendants Have Used The Nyan Cat Mark In Commerce In Connection With the Sale, Offering For Sale, And Advertising Of Goods Without Plaintiffs' Consent**

Plaintiffs allege that Defendants used the Nyan Cat Mark in commerce in connection with the sale, offering for sale, and advertising of goods without Plaintiffs' consent.

Plaintiffs are the owner of the Nyan Cat Mark, an inherently distinctive mark related to the Nyan Cat, a computer-generated depiction of a cat traveling through space, blazing a rainbow trail in its wake. Complaint ¶¶ 11, 12, 14. Plaintiff Torres is the sole owner of the Nyan Cat Mark and registered the Nyan Cat Mark with the Trademark Office for class 16 (jewelry) and applied for an intent to use application with regard to classes 9 (computers and software), 16 (paper items), 25 (clothing), 28 (games and toys). Complaint ¶14.

Defendants commercially advertised and sold Nyan Cat knock off products on the internet through iTunes and the Android store, among other places. Complaint ¶ 17; Susman Decl. ¶¶ 13-17 Exhs. ¶ 8-12. Defendants made no attempt to hide their infringing activities, advertising it as legitimate "nyan cat" apps. Complaint ¶ 17; Susman Decl. ¶ 15 Exh. ¶ 10. Defendants used the Nyan

-6-

**MOTION FOR DEFAULT JUDGMENT**

Cat Mark and/or derivations of the Mark without authorization or license from Plaintiffs.  Complaint ¶ 43.

Defendants' infringing products directly compete with Plaintiffs' business. Among other things, Plaintiffs have entered into lucrative contracts with third parties to develop, market and sell Nyan Cat games and apps. Complaint ¶ 16.

**b**.  **Defendants' Infringing Products Are Likely To Create Consumer Confusion**

The Complaint also adequately alleges that through their infringing products, Defendants are likely to cause confusion or mistake, or are likely to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs.  Complaint ¶¶ 24, 25, 36, 38, 43, 46.  The issue of likelihood of confusion is a mixed question of law and fact, but is considered to be predominantly factual in nature.  *See* Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir. 1985).  The Ninth Circuit considers eight factors to assess the likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be used by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  *See* AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

"The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 631 (9th Cir. 2005).  In the internet context, "the three most important Sleekcraft factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel." Perfumebay.com Inc. v. eBay Inc., 506 F.3d 1165, 1173 (9th Cir. 2007) (referring to these three factors as the "internet trilogy").  When the

**MOTION FOR DEFAULT JUDGMENT**

three primary internet factors support a likelihood of confusion, the other factors "must weigh strongly against a likelihood of confusion to avoid the finding of infringement." <u>Interstellar Starship Servs. v. Epix, Inc</u>., 304 F.3d 936, 942 (9th Cir. 2002). Plaintiffs' allegations, which are assumed to be true, fulfill the Sleekcraft criteria for the likelihood of confusion, including the three internet factors.

### i. **Plaintiffs' Nyan Cat Mark Is Robust**

The Nyan Cat Mark is well known and closely associated with Plaintiffs' business. "Since it was posted on YouTube in April 2011, Nyan Cat has become an internet viral phenomenon, with more than 82 million YouTube views as of August 2012, and has become an instantly recognizable work throughout the world. The subject video was YouTube's fifth most viewed video of 2011, and Nyan Cat won the 2011 Webby for 'Meme of the Year.'" Complaint ¶ 15.

"Since its creation, Torres has used Nyan Cat in interstate commerce. In addition, the Work is inherently distinctive, and it has acquired considerable value that is associated with Plaintiffs and the games and goods they have licensed. The public uses the Mark to identify Plaintiffs as the source of Nyan Cat goods and services." Complaint ¶ 14. Accordingly, the consumer public uses the Nyan Cat Mark to identify Plaintiffs' goods and services.

### ii. **The Goods Offered By Defendants Are Highly Competitive**

Plaintiffs are the owner of the Nyan Cat Mark, an inherently distinctive mark related to the Nyan Cat. Complaint ¶¶ 11, 12. Plaintiffs have licensed the Mark to numerous third parties who then sell official "Nyan Cat" products on the internet. Complaint ¶ 16.

Defendants commercially advertised and sold Nyan Cat knock off products on the internet through iTunes and the Android store, among other places. Complaint ¶ 17; Susman Decl. ¶¶ 13-17 Exhs. ¶ 8-12. Defendants made no

-8-

**MOTION FOR DEFAULT JUDGMENT**

attempt to hide their infringing activities, advertising them as legitimate "nyan cat" apps.  Complaint ¶ 17; Susman Decl. ¶¶ 13-17 Exhs. ¶ 8-12.

Because Plaintiffs and Defendants both sold Nyan Cat products, including games and apps on the internet, the goods offered by Defendants are highly competitive.  Where, as here, the services at issue are "related or complementary," the likelihood of confusion is heightened.  <u>M2 Software, Inc. v. Madacy Entertainment</u>, 421 F.3d 1073, 1082 (9th Cir. 2005).  For related goods or services, there is an increased danger that consumers will mistakenly assume there is an association between the source of the related goods or services, though no such association exists.  *See* <u>Sleekcraft</u>, 599 F.2d at 350. The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion.  <u>Id</u>.  Accordingly, the highly similar nature of the two competing businesses increases the likelihood of consumer confusion.

### iii.  <u>The Marks Used By Defendants Are Identical To Or Similar To The Nyan Cat Mark</u>

The Defendants have used a mark that is identical to or derivative of Plaintiffs' Nyan Cat Mark to identify their competing business.

As alleged herein above, Defendants commercially advertised and sold Nyan Cat knock off products on the internet that are substantially similar to Plaintiffs' Mark.  *See supra* Section III.B.1.; Complaint ¶ 17; Susman Decl. ¶¶ 13-17 Exhs. 8-12.  Defendants made no attempt to hide their infringing activities, advertising it as legitimate "nyan cat" apps.  Complaint ¶ 17.  "[W]hen the alleged infringer knowingly adopts a mark similar to another's, [a court] must presume that the public will be deceived."  <u>M2 Software</u>, 421 F.3d at 1085.

Here, the mark used by Defendants is virtually identical to Plaintiffs' Mark. Consequently, the public was, is, and likely will be deceived.

### iv.  <u>Marketing Channels Are Similar</u>

The likelihood of consumer confusion is compounded by the fact that both

-9-

**MOTION FOR DEFAULT JUDGMENT**

Plaintiffs and Defendants utilize the internet "as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion."  Perfumebay.com, 506 F.3d at 1174, citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1054, 1057 (9th Cir. 1999).  "[T]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the same screen."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206, 1207 (9th Cir. 2000).

As discussed herein, Nyan Cat is an internet phenomenon, and Plaintiffs successfully capitalized on its popularity by licensing numerous online products.  Consequently, Plaintiffs and Defendants used similar marketing channels to exploit the Mark, and Defendants' infringement can be presumed.

### v. **Defendants Intended To Infringe The Nyan Cat Mark**

Defendants' infringement of the Nyan Cat Mark was clearly intentional.

"On or about December 20, 2011, counsel for Plaintiffs sent SocialSoft a cease and desist letter that itemized SocialSoft's infringing conduct."  Complaint ¶ 18; Kamran Decl. ¶ 4 Exh. 3.  "On or about December 22, 2011, a representative from SocialSoft responded and acknowledged Plaintiffs' intellectual property.  The SocialSoft representative further acknowledged SocialSoft's wrongful acts and 'profusely' apologized for what he claimed was an 'honest mistake' and suggested that SocialSoft 'license the art' from Plaintiffs."  Complaint ¶ 19; Kamran Decl. ¶ 5 Exh. 4.  "In subsequent correspondence, SocialSoft stated categorically that it would contact iTunes and request that its offending products be removed from the site.  SocialSoft further

**MOTION FOR DEFAULT JUDGMENT**

stated its desire to enter into a settlement agreement and payment arrangement with Plaintiffs to resolve its wrongful acts."  Complaint ¶ 20.  "Despite the foregoing, Defendants continued to engage in blatant and willful infringement of Plaintiffs' intellectual property by using the Work in connection with products and merchandise that Defendants created, marketed, and sold to the public. Defendants took these actions with full knowledge that they had no rights in or to the Work."  Complaint ¶ 21.

Plaintiffs have thus adequately alleged Defendants' intent to infringe and capitalize upon Plaintiffs' mark.  Accordingly, the Complaint sufficiently pleads the first cause of action for trademark infringement.

### 3.  The Third Cause Of Action For False Designation Of Origin Is Adequately Pleaded

The Complaint's third cause of action amply pleads all of the elements required for federal unfair competition and false designation of origin. As discussed above, the Complaint satisfies the requirements for pleading a cause of action for trademark infringement.  Those allegations also satisfy the requirements for pleading a cause of action for unfair competition.  "The courts have uniformly held that common law and statutory trademark infringements are merely specific aspects of unfair competition."  The New West Corporation v. NYM Company of California, Inc., 595 F. 2d 1194, (9th Cir. 1979).  Trademark infringement is but a part of the broader law of unfair competition, and facts supporting a suit for infringement and one for unfair competition are substantially identical.  Heaton Distributing Co. v. Union Tank Car Co., 387 F. 2d 477, 483 (8th Cir. 1967).  Federal trademark infringement and federal unfair competition are measured by identical standards.  World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc., 280 F. Supp. 2d 413, 445(W.D. Pa. 2003).  The finding of trademark infringement and likelihood of confusion necessitates the finding of unfair competition.

**MOTION FOR DEFAULT JUDGMENT**

Accordingly, the Complaint sufficiently pleads the second cause of action for federal unfair competition and false designation of origin.

### C.    The Amount of Money at Stake

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *See* Cal. Security Cans, 238 F. Supp. 2d at 1176.   Plaintiffs seek an award of $100,000 plus attorneys' fees, costs, and interest.  While this amount is not insignificant, it does approach the maximum amount that can be awarded, and it does not represent a sum so large that default judgment would be disfavored.  *See* Eitel, 782 F.2d at 1472 (denying motion for default in part because amount sought totaled almost $ 3 million in damages).

In any event, the gravity of Defendants' conduct should not be taken lightly. Given the popularity of Plaintiffs' intellectual property, and the lengths to which Defendants went to deceive Plaintiffs and continued selling knock off goods (in addition to Defendants' unwillingness to comply with the judicial process), a default judgment is appropriate. Accordingly, this factor favors granting default judgment.

### D.    There Is No Possible Dispute Concerning Material Facts

Given the sufficiency of the Complaint, the overwhelming evidence that Defendants created, marketed and sold knock off products, and Defendants' default, "no genuine dispute of material facts would preclude granting [Plaintiffs'] motion." Cal. Security Cans, 238 F. Supp. 2d at 1177.  Moreover, Defendants have not appeared in this action or asserted any defenses.  Taking the allegations of the Complaint as true, there is no possibility of a dispute concerning material facts.

### E.    Defendants' Default Did Not Arise From Excusable Neglect

Defendants were properly served with the Summons and Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.  (Even after

**MOTION FOR DEFAULT JUDGMENT**

Defendants represented that they would accept service via mail, and further verified their address for service, Plaintiffs were forced to serve them via substitute service.  Susman Decl. ¶ 7 Exh. 7.)  Moreover, Defendants have been given every opportunity to respond to the Complaint, but are unwilling to do so. Susman Decl. ¶¶ 2, 7, 12 Exh. 5.  Specifically, Plaintiffs' counsel reached out to Mariappan on several occasions and requested that Mariappan contact counsel to discuss a resolution of this matter.  Susman Decl. ¶ 18 Exh. 13 Kamran ¶ 6 Exh. 5. Accordingly, as Defendants have avoided Plaintiffs' bona fide attempts to initiate settlement negotiations, Defendants can show no excusable neglect.

### F.   The Policy Favoring A Decision On The Merits

Finally, although cases should be decided on the merits whenever possible, Rule 55(a) specifically allows the termination of a case before a hearing on the merits when a defendant fails to defend an action, since a "[d]efendant's failure to answer [p]laintiff's [c]omplaint makes a decision on the merits impractical, if not impossible." Elektra Ent. Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005); Cal. Security Cans, 238 F. Supp. at 1177.

As Defendants have not manifested any interest in participating in this lawsuit or that they have any defenses to their infringing activities, the final Eitel factor favors a default judgment.

### III.   The Requested Relief

Plaintiffs seek a permanent injunction, statutory damages in the amount of $100,000 and attorney's fees in the amount of $5,600.

### A.   Injunctive Relief Under The Lanham Act

Unless Defendants' conduct is enjoined by the Court, Defendants' improper use of the Nyan Cat Mark will likely continue and will further dilute the exclusive association in the public's mind between Plaintiffs' mark and Plaintiffs.  Plaintiffs are, therefore, entitled to permanent injunctive relief against Defendants' continued infringement and dilution of the Mark.

**MOTION FOR DEFAULT JUDGMENT**

The Lanham Act provides the Court with the authority to issue the requested injunction. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988). The Court should, therefore, exercise its authority and issue an injunction.

### B.   Injunctive Relief Under The Copyright Act

The prevailing plaintiff in a copyright infringement action may obtain, in addition to monetary recovery, a permanent injunction restraining further infringement.  See 17 U.S.C. § 502(a).  The Copyright Act allows a court to grant an injunction in addition to monetary remedies "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Courts have granted injunctive relief even in situations of default.  See Amini Innovation Corp. v. KTY Int'l Mktg., 2011 U.S. Dist. LEXIS 26826, *13 (C.D. Cal. Mar. 1, 2011); Lifted Research Group, Inc. v. Salem, Case No. C-08-4497 SC, 2009 U.S. Dist. LEXIS 44850, 2009 WL 1371416 at *1 (N.D. Cal. May 15, 2009); Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003).

A party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); Autodesk, Inc. v. Flores, 2011 U.S. Dist. LEXIS 11687, 18-19 (N.D. Cal. Jan. 31, 2011).  Plaintiffs can satisfy these factors.

### 1.   Irreparable Harm And Inadequacy Of Monetary Damages

With regard to the first two factors, copyright infringement is generally

-14-
**MOTION FOR DEFAULT JUDGMENT**

presumed to give rise to irreparable harm for which there is no adequate remedy at law.  *See* Autodesk, LEXIS 11687 at *18-19; Microsoft Corp. v. Marturano, 2009 U.S. Dist. LEXIS 44450, *22-23 (E.D. Cal. May 27, 2009) ("copyright infringement is presumed to give rise to irreparable injury"); Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 826-27 (9th Cir. 1997) ("a presumption of irreparable injury arises if the plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim").

If nothing else, an injunction is needed to prevent future infringement. Where a defendant's acts are willful, as is the case here, plaintiff need not introduce evidence of a threat of future harm. *See* Microsoft Corp., LEXIS 44450 at *22-23; Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-1136 (9th Cir. 1986); Nat'l Football League v. McBee & Burno's Inc., 792 F. 2d 726, 729 (8th Cir. 1986).

Moreover, because Defendants previously filed a fraudulent counter-designation and failed to remove their infringing goods and services from the marketplace despite assurances to the contrary,[2] there is a threat that Defendants will continue to engage in this unlawful conduct.  *See* Marturano, LEXIS 44450 at *22-23; Broad. Music, Inc. v. Blueberry Hill Family Rests., 899 F. Supp. 474, 483 (D. Nev. 1995) (inferring a threat of future infringement from the "thin excuses" the defendant made when confronted with infringement allegations).

The Complaint and substantiated evidence show that Defendants blatantly infringed upon Plaintiffs' copyright.  Because Defendants have failed to respond to the Complaint and are unwilling to enter into a dialogue regarding resolving this action, it is not possible to determine with certainty whether Defendants are continuing to infringe on Plaintiffs' copyright, if Defendants have presently stopped, or whether they will resume their infringing activities in the future.  *See* Amini Innovation, 2011 U.S. Dist. LEXIS 26826 at *14.  Plaintiffs' injury cannot

---

[2] *See* Complaint ¶¶ 19, 22.

**MOTION FOR DEFAULT JUDGMENT**

be remedied by monetary compensation alone.  As such, an injunction is the only remedy available to limit the potential of future injury.

Finally, Plaintiffs' actual damages are difficult to quantify.  For example, because Defendants have failed to participate in this litigation, Plaintiffs are unable to assess Defendants' profits, which should be disgorged.  *See* <u>Amini Innovation</u>, LEXIS 26826 at *14.

## 2. <u>Balance Of Hardships</u>

As to the third factor, while Plaintiffs will be harmed by continued infringement and needless litigation to enforce its copyrights, there is no potential harm to Defendants as an injunction would simply require them to comply with the Copyright Act.  *See* <u>Autodesk</u>, LEXIS 11687 at*19; <u>Dish Network, L.L.C. v. SatFTA</u>, 2011 U.S. Dist. LEXIS 25038 (N.D. Cal. Mar. 9, 2011).

## 3. <u>Public Interest</u>

Finally, the public interest in protecting the exclusive rights conferred upon a copyright holder will be served by issuing an injunction.  *See* <u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1255 (3d Cir. 1983).  "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."  <u>Klitzner Industries, Inc. v. H. K. James & Co.</u>, 535 F. Supp. 1249, 1260 (E.D. Pa. 1982).

## C. <u>Statutory Damages Under The Lanham Act</u>

The Court has the authority pursuant to 15 U.S.C. ¶1117(c) to award Plaintiffs statutory damages of not less than $1,000 and not more than $200,000 for the Defendants' violation of the Lanham Act.  Where the use of the counterfeit mark is "willful," 15 U.S.C. ¶1117(c) allows the court to award damages up to $2 million.

**MOTION FOR DEFAULT JUDGMENT**

Although Defendants' infringement was clearly willful as demonstrated by their false counter-notification to Google,[3] and the fact that their products are still for sale in the marketplace,[4] Plaintiffs only seek an award of $100,000.

### D. Statutory Damages Under the Copyright Act

Under 17 U.S.C. § 504(a), an infringer is liable to a copyright owner for either actual or statutory damages. Plaintiffs elect statutory damages in an amount "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003) (internal quotation omitted). Additionally, in a case where the copyright owner sustains the burden of proving that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. See 17 U.S.C. § 504(c)(2).

Here, Defendants copied and sold identical knock offs of the Nyan Cat. After being caught, Defendants only compounded their duplicity by sending a blatantly false counter-notification to Google. Complaint ¶ 23. Even after speaking with Plaintiffs' counsel and promising to remove their counterfeit goods, Defendants continue to sell their imposter goods online. Susman Decl. ¶¶ 13-17 Exhs. 8-12. Accordingly, Defendants' willfulness is manifest and Plaintiffs seek statutory damages of $100,000, which is less than the statutory maximum.

### E. Attorney's Fees

Plaintiffs are entitled to attorney's fees as a prevailing party under 17 U.S.C. § 505. On a motion for default judgment, Local Rule 55-3 states that the fees shall be calculated according to a certain schedule. See L.R. 55-3. That schedule provides for fees of $3,600 plus four percent of the amount over $50,000 where the Court awards between $50,000.01 and $100,000. See L.R. 55-3.

---

[3] Kamran Decl. ¶ 3 Exh. 2.
[4] Susman Decl. ¶¶ 13-15 Exhs. 10-12.

**MOTION FOR DEFAULT JUDGMENT**

1    Here, Plaintiffs seek statutory damages of $100,000 under 17 U.S.C. § 504.

2  Therefore, the proper attorneys' fees award is $5,600.

3

4

5  Dated:  July 2, 2013                          FREEDMAN + TAITELMAN, LLP

6

7                                                By: _____/s/_____

8                                                JORDAN SUSMAN
                                                 Attorney for Plaintiffs
9                                                Christopher Orlando Torres and
                                                 Nyanify, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR DEFAULT JUDGMENT**